IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LOIS YATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION**   1:18-cv-82-LG-RHW |
| | ) | |
| **WAFFLE HOUSE INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Comes now the Plaintiff, Lois Yates, ("hereinafter Plaintiff") through her undersigned counsel and files her Complaint under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 et seq for declaratory and injunctive relief.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and its implementing regulations, and this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3. Plaintiff, Lois Yates, has malignancy (more commonly known as "cancer") in addition to severe lung damage and chronic obstructive pulmonary disease. As a result, Ms. Yates requires the use of mobility aids for locomotion. The extent of Ms. Yates' physical disabilities limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, and work; all of which are

major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Yates is, accordingly, a person with a disability pursuant to the Americans with Disabilities Act, in that she has a physical impairment substantially limiting one or more major life activities.  42 U.S.C. § 12102; See also 28 C.F.R. § 36.104.

4.    Defendant, Waffle House Inc., (hereinafter "Waffle House"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Waffle House Inc., "owns" and "operates" the Waffle House restaurant ("restaurant") located at 10081 3rd Avenue, D'Iberville, Mississippi 39540. 42 U.S.C. § 12182. The restaurant is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a restaurant providing food and drink to the public. Accordingly, it is covered by the ADA and must comply with the Act.

5.    All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendant is a citizen thereof.

6.    Plaintiff Lois Yates, resides in Biloxi and lives in proximity to the Waffle House Restaurant. She has been to Waffle House many times because she passes it on her way to and from her doctor's appointments at Merritt Health. Plaintiff intends to continue going to Waffle House again, because she wants

to enjoy the "Unique American Phenomenon" sit down table service restaurant offering unbeatable combinations of great food for the value 24 hours a day 365 days a year. She will return, not only to eat at the Restaurant, but to also confirm compliance with the ADA by Waffle House. Plaintiff cannot provide a specific time and date upon which she will return to the restaurant because she has not and should not be expected to engage in such definite future planning. Plaintiff, like other fast food customers, often patronizes a quick service establishment on the spur of the moment. Nevertheless, Plaintiff definitely intends to return to the restaurant.

7.   Because of the barriers described herein, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of her disabilities.

8.   Plaintiff accordingly, has Article III standing to pursue this case because (1) she is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendant's restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's practices described herein, and by Defendant's denial of the use of the restaurant for her full and equal enjoyment as compared to people without disabilities. and (4) because of these injuries, there exists a genuine threat of imminent future injury. Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers described remain at the facility.

**COUNT ONE**
(Architectural Barriers)
*Failure to Design and Construct in accordance with the ADA Standards*

9.   Plaintiff incorporates by reference and realleges all the paragraphs above.

10.  Defendant has failed to design and construct this restaurant in accordance with the ADA standards as required and has failed to bring the restaurant into compliance with the applicable ADA Standards when the facility was subsequently altered.

11.  In enacting the ADA, Congress found, among other things that Persons with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S. C. §12101(A)(5).

12.  In response to these findings, Congress explicitly stated that the purpose of the ADA was to:

**A.** Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

**B.** Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

**C.** Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in

order to address the major areas of discrimination faced on a daily basis by people with disabilities. 42 U.S.C. § 12101(b)(1)(2) and (4).

13.  The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, were required to be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." was and is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14.  New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28

C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15. Plaintiff is informed and believes based on publicly available information that the building in which the restaurant is located was first constructed in 1998.

16. Plaintiff is further informed and believes based on publicly available information that the restaurant underwent alterations and/or improvements on or after October of 2016 with subsequent improvements thereafter.

17. The following is a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude or limit Plaintiff's ability (because of her disabilities) to access the Property and/or fully and equally enjoy the goods, services, facilities, privileges, advantages and/or accommodations offered in the facility. The citations are to the ADA 2010 Standards, because the 2010 Standards are applicable to modifications made after March 15, 2012. 28 C.F.R. § 36.406(5)(ii).

   A. Based on the total number of parking spaces at the restaurant, Defendant has failed to provide the required number of accessible parking spaces. Standards § 208.2 and 508;

   B. Defendant has failed to provide at least one "van" accessible parking space measuring 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measuring 96 inches wide

with a 96-inch-wide adjacent access aisle. Standards § 208.2.4 and 502.2;

**C.** Defendant has failed to provide required signage for accessible parking. Standards § 502.6 and 502.2;

**D.** Defendant has failed to provide the required minimum slope level at the existing designated accessible parking spaces and access aisles because running and/or cross slopes exceed the maximum slope requirement of "no less than 1:48 in any direction", in violation of Standards 208 and 502.4;

**E.** Defendant has failed to provide the required accessible routes from the parking lot to the entrance, including uneven paths of access. The protrusion of the curb ramp into the designated access aisle further demonstrates the violation of the maximum slope requirements for accessible parking spaces and access aisles.

**F.** The slope of the curb ramp leading from the designated access aisle is too steep in violation of Standard 406. In addition, the slope of the flared sides of the curb ramp exceeds the minimum slope requirement in violation of Standard 406.3;

**G.** The check-out counter fails to meet the 36-inch height and length requirements in violation of §904;

**H.** The dining area does not contain the required 5% of the tables which meet the height and knee clearance requirements of §226 and §902.3;

**I.** Counters and bars are not installed within an accessible height range as required by Standards 226, 227, 902 and 904;

**J.** In the women's single-user designated accessible restroom, the locking mechanism on the door requires the use of tight grasping, twisting, and/or pinching of the wrist in violation of §309.4;

**K.** The location of the toilet paper dispenser is in violation of 607.4 and 309.4;

**L.** The lavatory faucets require tight grasping in violation of 6.6.4;

**M.** The lavatory water and drain pipes are not insolated in violation of 6.6.5;

**N.** The location of the hand dryer encroaches into the lavatory maneuvering clearance §402.1 and 307;

**O.** The trash can impedes the clear floor space required at the toilet in violation of §604.3.1 and 2;

**P.** The surface of the route leading to the lavatory includes a level change with a slope which exceeds 2% at the floor drain in violation of §403;

**Q.** The soap dispenser lacks the required clear floor space for a forward or parallel approach due to its location.  §308 and 606.1;

18.     The above listing is not intended to be an all-inclusive list of the barriers, conditions and violations of the ADA encountered by Plaintiff and existing at the Property. Although, the above listing, in and of itself, denied and still denies Plaintiff, due to her disabilities, and equal enjoyment of the goods,

services, facilities, privileges, advantages, and/or accommodations offered at the Property in violation of the ADA. Plaintiff requires a full and complete inspection of the Property, with full access thereto, in order to determine all of the Defendant's discriminatory acts violating the ADA relevant to Plaintiff's disabilities.

19.   Plaintiff believes that violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the Statute.

20.   Failure of the Defendant to "design and construct" and alter this facility in compliance with the ADA's New construction standards is a direct violation of the statute, and more specifically, has a discriminatory impact on Plaintiff and all persons similarly situated.

## COUNT TWO
*(Failure to modify policies, practices, and procedures which deny equal access to benefits and services)*
**42 U.S.C. § 12182(b)(2)(A)(ii)**

21.   Plaintiff incorporates by reference and realleges all the paragraphs above.

22.   The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, persons with disabilities must receive equal benefits as compared to the benefits received by persons without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. §

12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

23.   ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Creating unlawful architectural barriers by failure to design, construct and alter the facility in accordance with the ADA Standards as set forth in Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

24.     For this reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> "A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both *tangible barriers* (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and *intangible barriers* (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."

25.     Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

26.     Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, full and equal access to goods or services to persons with disabilities.

27. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The architectural barriers identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

28. Defendant's obvious disregard for compliance with the ADA's alteration standards reflects, at a minimum, a policy which excludes persons with disabilities in the planning and implementation of alterations of the facility. Renovation of the facility afforded Defendant a post-construction opportunity to bring the restaurant into compliance with the ADA Standards, but Defendant's policies and practices of non-compliance with the ADA's alteration standards effectively ensure that persons with disabilities continue to have unequal access to the services and accommodations offered.

29. Defendant's practices at the restaurant literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those practices include but are not limited to:

    A. Defendant denies accessible and useable parking to persons with disabilities;

    B. Defendant provides an unequal path of travel from the parking area to the entrance by maintenance of a non-compliant curb ramp as a part of the path of travel. These barriers may force some persons with physical disabilities to seek assistance getting into and out of the restaurant,

whereas, persons without disabilities can easily access the facility's entrance and exit;

**C.** Defendant makes self-service counters and drink machines throughout its facility inaccessible for use by persons with disabilities by failing to provide these elements at a reachable height for persons with disabilities. Because these service counters and items are not accessible for people with physical disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to access these services independently;

**D.** Defendant makes its check-out counter inaccessible to persons with disabilities by failing to provide the counter at a reachable height. Because the service counter is not accessible for people with physical disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to independently access the services of paying for, ordering and picking up food;

**E.** Defendant makes its service counter and point of sale machines inaccessible to persons with disabilities by failing to locate these items within a reachable range. Because the service counter is not accessible for people with physical disabilities, Defendant appears to have no policy of providing assistance or allowing a person with a disability to access the service counter and independently use the point of Sale machines;

F. Defendant's seating arrangements in the dining area are designed, positioned, and oriented in a way that excludes or otherwise segregates persons who use wheelchairs to an experience that is not the same restaurant experience that is afforded to persons who do not use wheelchairs. Persons using wheelchairs are forced to sit at only one type of table or facing the wall, and, therefore, are blatantly excluded from the diversity of seating locations and scenery offered to persons without disabilities;

G. Defendant makes its toilet facilities inaccessible for use by persons with disabilities by failing to maintain the required ADA accessible elements within the restrooms so that Plaintiff is denied the opportunity to independently use all the features in the restroom;

30.  As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant either has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

31.  To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations.

**32.** Defendant, "owns" and "operates" or "leases" the restaurant which is the subject of this action and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

**33.** Plaintiff, hereby, provides sufficient notice of her demands for a modification of Defendant's policies, practices, and procedures.

**34.** Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**35.** Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
*(Plaintiff has been denied Full and Equal Enjoyment of the
goods, services and facilities of the restaurant)*
**42 U.S.C. §12182(a)**

**36.**   Plaintiff incorporates by reference and realleges all the paragraphs above.

**37.**   42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, or accommodations of any
> place of public accommodation by any person who owns, leases
> (or leases to), or operates a place of public accommodation."*

**38.**   Congress enacted the ADA upon finding, among other things, that "society

has tended to isolate and segregate individuals with disabilities" and that such

forms for discrimination continue to be a "serious and pervasive social

problem." 42 U.S.C. § 12101(a)(2).

**39.**   Congress also found that: "*individuals with disabilities continually encounter

various forms of discrimination, including outright intentional exclusion, the

discriminatory effects of architectural, transportation, and communication barriers,

overprotective rules and policies, failure to make modifications to existing facilities and

practices, exclusionary qualification standards and criteria, segregation, and relegation

to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. §

12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to

assure equality of opportunity, full participation, independent living, and economic self-

sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found

that: "*the continuing existence of unfair and unnecessary discrimination and prejudice

denies people with disabilities the opportunity to compete on an equal basis and to*

*pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

40.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

41.   The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

42.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

43.   To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only

barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

44.   For that reason, the Act applies to any barrier that denies or diminishes disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation. 42 U.S.C. 12182.

45.   The keystone for analysis of full and equal enjoyment is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide guests with disabilities with a like experience*. <u>Spector v. Norwegian Cruise Line Ltd.</u>, 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005).

46.   Plaintiff demands that she be afforded the same level of service and treatment as is offered to non-disabled individuals, so as to be offered the same experience as those not disabled.

47.   Plaintiff specifically and definitely wants to return to the Defendant's restaurant to enjoy Waffle House's quick  sit down table service found at fast

food restaurants offering unbeatable combinations of great food for the value 24 hours a day 365 days a year. More specifically, Plaintiff demands to be afforded the same level of service and same experience that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff, as follows: Defendant failed to provide an accessible parking area and accessible route for disabled individuals, which means Plaintiffs cannot park, cannot independently get out of the car and onto her wheelchair, cannot independently travel from the parking area into the establishment, cannot determine if there is a usable parking space, and must determine by trial and error how they are to park and move into the establishment; Defendant's failure to provide Plaintiff the same "Unique American Phenomenon" sit down table service by Waffle House use of its seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates individuals with disabilities an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, individuals with disabilities are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the various dining service experience; Defendant's failure to provide Plaintiff the same experience at its bar by failing to provide any bar counter that conforms to the ADA design standards, which means Plaintiff cannot enjoy the experience of ordering food or any other benefit or service able-bodied individuals get to enjoy when sitting at the bar counter;

Defendant failed to provide an accessible seating area for disabled individuals, which means Plaintiff cannot independently use and dine in the elevated dining area; Defendant failed to provide the same experience by making it nearly impossible for customers with disabilities to access the hostess service counter, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide an accessible restroom for individuals with disabilities, which means that those individuals  are denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and prohibited from using all the other elements of the restroom; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible dining experience has segregated or otherwise treated Plaintiff and others similarly situated persons differently, in that, Waffle House makes Plaintiff dependent on family or an independent third party which is not the same dining experience that Waffle House Inc. affords to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have at Waffle House.

48. Accordingly, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated persons with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No.*

*101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

49.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the restaurant.

50.   Defendant's conduct and Defendant's unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction, Defendant will continue to treat Plaintiff and other similarly situated patrons unequally.

51.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

52.  Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

53.  Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, Lois Yates, demands judgment against the Defendant on Counts One, Two, and Three, and requests the following injunctive and declaratory relief:

1.  That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.  That the Court enter an order directing the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.  That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Waffle House experience and to the use of the

establishment, and further order Defendant to maintain the required accessible features at the facility so that Plaintiff and others similarly situated are offered the same experience that is offered to members of the general public without disabilities, as stated in Count Three. 42 U.S.C. § 12182(a).;

5.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

6.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this 16th Day of March, 2018.

/s/ _____

**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this __16th__ day of March, 2018 to the following:

**Waffle House Inc.**
c/o Corporation Service Company
attn.: Registered Agent
5760 I-55 North, Suite 150
Jackson, MS 39211

/s/ _____
**Pshon Barrett**
MS- 2071
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
Pshon.Barrett@ADA-Firm.com
*Attorney for the Plaintiff*